TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
Special Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2238
    Facsimile: (213) 894-0141
    E-mail:   kyle.kahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-282-DMG |
|        Plaintiff, | PLEA AGREEMENT FOR DEFENDANT<br>ELVYN ANTONIO RODRIGUEZ |
|           v. | |
| ELVYN ANTONIO RODRIGUEZ,<br>   aka "Elvyn Meneses<br>   Rodriguez," | |
|        Defendant. | |

    1.   This constitutes the plea agreement between ELVYN ANTONIO RODRIGUEZ ("defendant"), aka Elvyn Meneses Rodriguez, and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts three, four,

five, and nine of the indictment in <u>United States v. Elvyn Antonio Rodriguez</u>, CR No. 21-282-DMG, which charges defendant with three counts of Robbery of Mail and Property of the United States effectuated by placing the victim's life in jeopardy by the use of a dangerous weapon, in violation of 18 U.S.C. § 2114(a) (counts three through five) and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (count nine).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following seized by law enforcement from defendant (collectively, the "Forfeitable Assets"):

i.    a 9mm handgun magazine seized by law enforcement on May 28, 2021 from 9423 Reseda Boulevard, Apartment # 351, Northridge, CA;

ii.   two rounds of 9mm ammunition seized by law enforcement on May 28, 2021 from 9423 Reseda Boulevard, Apartment # 351, Northridge, CA;

iii. a Rose Apple iPhone cellular device seized by law enforcement from defendant's person on May 28, 2021 at 9423 Reseda Boulevard, Northridge, CA; and

iv.   A black Alcatel cellular device seized by law enforcement from defendant's person on May 28, 2021 at 9423 Reseda Boulevard, Northridge, CA.

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.    That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

1              e.    Except for criminal tax violations (including

2    conspiracy to commit such violations chargeable under 18 U.S.C.

3    § 371), not further criminally prosecute defendant for violations of

4    18 U.S.C. § 924(c) arising out of defendant's conduct described in

5    the agreed-to factual basis set forth in paragraph 14 below.

6    Defendant understands that the USAO is free to criminally prosecute

7    defendant for any other unlawful past conduct or any unlawful conduct

8    that occurs after the date of this agreement.  Defendant agrees that

9    at the time of sentencing the Court may consider the uncharged

10   conduct in determining the applicable Sentencing Guidelines range,

11   the propriety and extent of any departure from that range, and the

12   sentence to be imposed after consideration of the Sentencing

13   Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

14                       <u>NATURE OF THE OFFENSES</u>

15       5.    Defendant understands that for defendant to be guilty of

16   the crime charged in counts three, four, and five, that is, Robbery

17   of Mail and Property of the United States, effectuated by placing the

18   victim's life in jeopardy by the use of a dangerous weapon, in

19   violation of Title 18, United States Code Section 2114(a), the

20   following must be true: (1) defendant intentionally took any mail

21   matter or any other property of the United States from the person or

22   presence of a person, who was in lawful charge, control, or custody

23   of said mail matter or property; (2) the defendant took such property

24   against the victim's will by means of force and violence, or by means

25   of intimidation; and (3) while committing the robbery, the defendant

26   jeopardized the life of the victim by using a dangerous weapon.

27       6.    Defendant understands that for defendant to be guilty of

28   the crime charged in count nine, that is, Aggravated Identity Theft,

in violation of Title 18, United States Code Section 1028A(a)(1), the following must be true: (1) defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person; (2) defendant knew that the means of identification belonged to a real person; and (3) defendant did so during and in relation to Access Device Fraud in Excess of $1,000.

<u>PENALTIES AND RESTITUTION</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2114(a) effectuated by placing the victim's life in jeopardy by the use of a dangerous weapon is: 25 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A is: a two-year term of imprisonment, which must run consecutive to any other sentence of imprisonment; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 77 years' imprisonment; a three-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $400.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for

7

the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is at minimum approximately $2,765.42, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

14.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant

and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on or about May 7, 2021, in Los Angeles County, within the Central District of California, defendant, by means of force, violence, and intimidation, took mail matter and property of the United States from A.G., a person having lawful charge, control, and custody of said mail matter and property and, in doing so, placed the life of A.G. in jeopardy by using a dangerous weapon. Additionally, beginning on or about May 8, 2021, in Los Angeles County, within the Central District of California, defendant, by means of force, violence, and intimidation, took mail matter and property of the United States from H.M., a person having lawful charge, control, and custody of said mail matter and property and, in doing so, placed the life of H.M. in jeopardy by using a dangerous weapon. And, beginning on or about May 14, 2021, in Los Angeles County, within the Central District of California, defendant, by means of force, violence, and intimidation, took mail matter and property of the United States from R.C., a person having lawful charge, control, and custody of said mail matter and property and, in doing so, placed the life of R.C. in jeopardy by using a dangerous weapon. In doing so, defendant caused R.C. to suffer serious bodily injury. Finally, throughout the period of on or about April 30, 2021 to on or about May 14, 2021, defendant knowingly used without legal authority a means of identification of

H.M., during and in relation to Access Device Fraud in Excess of $1,000.

Specifically, on April 30, 2021, defendant and Individual-1 approached S.P. in Encino, California.  Upon reaching S.P., defendant and Individual-1 demanded mail matter and property belonging to the United States from S.P.  To further intimidate S.P., Individual-1 used and pointed a black weapon resembling a firearm at S.P. Defendant and Individual-1 subsequently took property from S.P. and fled in a Chevrolet pick-up truck.

On May 5, 2021, defendant, Individual-1, and Individual-2 approached K.J. in North Hills, California.  Defendant and Individual-2 demanded K.J.'s wallet and pointed a black weapon resembling a taser or firearm at K.J.  In doing so, defendant and the other individuals placed the life of K.J. in jeopardy by using a dangerous weapon.  When K.J. did not comply, Individual-2 pushed K.J. to the ground.  Individual-1 then took property from K.J., including his backpack, cell phone, wallet, the keys to a United States Postal Service vehicle, mail matter, and a Citibank credit card.  K.J.'s Citibank credit card was an access device.  Defendant, Individual-1, and Individual-2 then fled in a stolen Chevrolet Malibu.  The same day, defendant attempted to use K.J.'s Citibank credit card at a Target in Northridge, California to purchase $830 in gift cards and at a Cig City store in Northridge to purchase $82.29 in merchandise. In doing so, defendant knowingly transferred, possessed, and used K.J.'s credit card, a means of K.J.'s identification, without legal authority during and in relation to committing Access Device Fraud in Excess of $1,000.

11

On May 7, 2021, defendant approached A.G., a United States Postal Service mail carrier having lawful charge, control, and custody of mail matter and property of the United States, in Van Nuys, California, pointed a concealed black weapon resembling a firearm, and used it to demand A.G.'s wallet and other items. A.G. complied and handed defendant his wallet, the keys to his United States Postal Service truck, and mail matter and property of the United States, namely an arrow key and mail. In doing so, defendant took property from A.G. by means of force, violence, and intimidation and placed A.G.'s life in jeopardy by using a dangerous weapon. Inside of A.G.'s wallet was an Amazon Chase credit card, an American Express credit card ("AMEX"), A.G.'s California driver's license, and $60 in cash. Both A.G.'s Chase credit card and AMEX were access devices. Defendant and Individual-3 then fled in a stolen Chevrolet Malibu and drove to a nearby Arco gas station in Van Nuys. There, defendant attempted to use A.G.'s AMEX at an ATM to withdraw money from A.G.'s bank account. After unsuccessfully withdrawing money, defendant used A.G.'s AMEX to purchase $36.24 in gasoline. Defendant then drove to a nearby Big 5 Sporting Goods store in Encino, California, and, along with Individual-3, used A.G.'s AMEX to purchase clothing, a backpack, a USB cable, and a BB gun totaling $381.74. Defendant then drove to an AutoZone store in Reseda, California, and used A.G.'s Chase credit card to purchase $87.23 in brake pads, lubricant, and decals. Shortly thereafter, defendant used A.G.'s Amazon Chase credit card and driver's license and attempted to purchase an iPhone case and other items at a MetroPCS store in Reseda for $382.30. In doing so, defendant knowingly transferred, possessed, and used A.G.'s credit cards and driver's

1  license, both a means of A.G.'s identification, without legal

2  authority during and in relation to committing Access Device Fraud in

3  Excess of $1,000.

4      On May 8, 2021, defendant approached H.M., a United States

5  Postal Service mail carrier having lawful charge, control, and

6  custody of mail matter and property of the United States, in North

7  Hills, California.  Defendant concealed an object resembling a

8  firearm with his shirt, held it by his side, and used it to demand

9  H.M.'s wallet, money, and keys.  Afraid, H.M. complied and handed

10  over their wallet, cell phone, and keys.  Defendant then demanded

11  H.M. provide him with the cell phone's password.  H.M. complied and

12  provided the password under duress.  Afterwards, while still under

13  duress, H.M. handed defendant mail matter and property belonging to

14  the United States, namely an arrow key.  In doing so, defendant took

15  property from H.M. by means of force, violence, and intimidation and

16  placed H.M.'s life in jeopardy by using a dangerous weapon.

17  Defendant then fled in an unknown vehicle.  Inside of H.M.'s wallet

18  was a Bank of America credit card.  H.M.'s Bank of America credit

19  card was an access device.  The same day, defendant used H.M.'s Bank

20  of America credit card at an Outlet 8 store in Northridge, to

21  purchase $64.54 in clothing.  Defendant then used the credit card at

22  a Big 5 Sporting Goods store in Northridge to purchase a watch and

23  bracelet set for $21.86 and a B.B. gun for $268.20.  Next, defendant

24  used the credit card at a G&E Smoke store in Northridge to purchase a

25  lighter for $20.50 and a glass pipe for $186.40.  Defendant then used

26  the credit card one additional time at an Exxon gas station in

27  Northridge to purchase $45.89 in gasoline.  In doing so, defendant

28  knowingly transferred, possessed, and used H.M.'s credit card, a

means of H.M.'s identification, without legal authority during and in relation to committing Access Device Fraud in Excess of $1,000.

In totality, during a one-year period between May 5, 2021 and May 8, 2021, defendant knowingly and with fraudulent intent used unauthorized access devices all issued to other persons, namely five debit and credit account numbers belonging to K.J., A.G., and H.M., and, during that time, obtained things of value together totaling over $1,000. In doing so, defendant affected commerce between one state and another state.

Finally, on May 14, 2021, defendant, while carrying a grey semi-automatic firearm, approached R.C., a United States Postal Service mail carrier having lawful charge, control, and custody of mail matter and property of the United States. Upon reaching R.C., defendant demanded R.C.'s wallet. When R.C. refused, defendant cocked his firearm. R.C. and defendant then began to struggle over the firearm. During the struggle, defendant discharged the firearm, leaving gunshot residue on R.C.'s left shoulder. Defendant, by means of force, violence, and intimidation, then took mail matter from R.C. and fled in a stolen Chevrolet Malibu alongside Individual-4. In doing so, defendant took property of the post office and placed R.C.'s life in jeopardy by using a dangerous weapon by using and discharging a firearm. As a result of the gunshot, R.C. was transported to a hospital and diagnosed with serious bodily injury, namely a ruptured ear drum caused by the discharge of the firearm within close proximity to his head.

Based on his conduct, defendant caused USPS a loss of at least $1,805.42, A.G. a loss of $60, and H.M. a loss of $960.

14

1

SENTENCING FACTORS

2      15.  Defendant understands that in determining defendant's
3  sentence the Court is required to calculate the applicable Sentencing
4  Guidelines range and to consider that range, possible departures
5  under the Sentencing Guidelines, and the other sentencing factors set
6  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
7  Sentencing Guidelines are advisory only, that defendant cannot have
8  any expectation of receiving a sentence within the calculated
9  Sentencing Guidelines range, and that after considering the
10  Sentencing Guidelines and the other § 3553(a) factors, the Court will
11  be free to exercise its discretion to impose any sentence it finds
12  appropriate up to the maximum set by statute for the crimes of
13  conviction.

14      16.  Defendant and the USAO agree to the following applicable
15  Sentencing Guidelines:

16  <u>Count Three:</u>

17  Base Offense Level:              20              U.S.S.G. § 2B3.1(a)

18  Taking or Attempted Taking of
19  Post Office Property            +2          U.S.S.G. § 2B3.1(b)(1)

20  Use of a Dangerous Weapon       +4      U.S.S.G. § 2B3.1(b)(2)(D)

21

22  <u>Count Four:</u>

23  Base Offense Level:              20              U.S.S.G. § 2B3.1(a)

24  Taking or Attempted Taking of
    Post Office Property            +2          U.S.S.G. § 2B3.1(b)(1)

25  Use of a Dangerous Weapon       +4      U.S.S.G. § 2B3.1(b)(2)(D)

26

27  <u>Count Five:</u>

28  Base Offense Level:              20              U.S.S.G. § 2B3.1(a)

15

| Taking or Attempted Taking of Post Office Property | +2 | U.S.S.G. § 2B3.1(b)(1) |
|---|---|---|
| Discharge of a Firearm | +7 | U.S.S.G. § 2B3.1(b)(2)(A) |
| Serious Bodily Injury | +4 | U.S.S.G. § 2B3.1(b)(3)(A) |
| <u>Multi-Group Adjustment:</u> | +2 | U.S.S.G. § 3D1.4[1] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

---

[1] The parties agree that Count Five counts as one unit pursuant to U.S.S.G. § 3D1.4(a) and Counts Three and Four each count as one-half unit pursuant to U.S.S.G. § 3D1.4(b).

16

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

20.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21.   Defendant agrees that, provided the Court, before imposition of the mandatory consecutive sentence of two years' imprisonment on count nine, imposes a total term of imprisonment

within or below the range corresponding to an offense level of 32 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following:  (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

23.   The USAO agrees that, provided before imposition of the mandatory consecutive sentence of two years' imprisonment on count nine, the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 32 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $2,765.42.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

24.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

25.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both

the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

recommendations or the parties' agreements to facts or sentencing factors.

30. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

*Kyle Kahan*                                    March 7, 2022
KYLE W. KAHAN                                   Date
Special Assistant United States
Attorney

X _____                     3/7/22
ELVYN ANTONIO RODRIGUEZ                          Date
Defendant

_____                       3/7/22
REID ROWE                                        Date
Attorney for Defendant ELVYN
ANTONIO RODRIGUEZ

1                    <u>CERTIFICATION OF DEFENDANT</u>

2        I have read this agreement in its entirety.  This agreement has

3  been read to me in Spanish, the language I understand best.  I have

4  had enough time to review and consider this agreement, and I have

5  carefully and thoroughly discussed every part of it with my attorney.

6  I understand the terms of this agreement, and I voluntarily agree to

7  those terms.  I have discussed the evidence with my attorney, and my

8  attorney has advised me of my rights, of possible pretrial motions

9  that might be filed, of possible defenses that might be asserted

10  either prior to or at trial, of the sentencing factors set forth in

11  18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

12  and of the consequences of entering into this agreement.  No

13  promises, inducements, or representations of any kind have been made

14  to me other than those contained in this agreement.  No one has

15  threatened or forced me in any way to enter into this agreement.  I

16  am satisfied with the representation of my attorney in this matter,

17  and I am pleading guilty because I am guilty of the charges and wish

18  to take advantage of the promises set forth in this agreement, and

19  not for any other reason.

20  _____          3/7/22
                                            _____
21  ELVYN ANTONIO RODRIGUEZ                   Date
    Defendant

22
                        <u>CERTIFICATION OF INTERPRETER</u>
23
24        I, Carina Arriola , am fluent in the written and

    spoken English and Spanish languages.  I accurately sight-translated this
25
    entire agreement from English into Spanish to defendant ELVYN ANTONIO
26
    RODRIGUEZ on this date.
27                                            3/7/22
    _____          _____
28  INTERPRETER                               Date

                                24

1

## CERTIFICATION OF DEFENDANT'S ATTORNEY

2    I am ELVYN ANTONIO RODRIGUEZ's attorney.  I have carefully and

3 thoroughly discussed every part of this agreement with my client.

4 Further, I have fully advised my client of his rights, of possible

5 pretrial motions that might be filed, of possible defenses that might

6 be asserted either prior to or at trial, of the sentencing factors

7 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 guilty pleas pursuant to this agreement.

16

17 _____          _____3/7/22_____
REID ROWE                                Date
18 Attorney for Defendant
ELVYN ANTONIO RODRIGUEZ

19

20

21

22

23

24

25

26

27

28